**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | |
| v. | Criminal Action No. 22-cr-183 (TSC) |
| **LYNNWOOD NESTER**, | |
| Defendant. | |

**UNITED STATES' RESPONSE TO DEFENDANT'S
BRIEF IN OPPOSITION TO AND MOTION TO EXCLUDE
GOVERNMENT'S NOTICE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)**

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, files this Response in Opposition to the Defendant's Brief in Opposition

to Government's Notice Pursuant to Federal Rule of Evidence 404(b) and Motion to Exclude.  For

the reasons set forth below, this Court should deny the Defendant's request to exclude relevant,

non-propensity, evidence, and rule that such evidence is admissible at trial pursuant to Rule 404(b).

**I.      BACKGROUND**

1.   Factual Background

On January 6, 2021, the United States Congress was scheduled to meet for the

constitutionally prescribed joint session to certify the results of the 2020 presidential election. The

Defendant was part of a mob that illegally entered the Capitol building and prevented Congress

from executing its constitutional obligations for approximately six hours.

One day before, on January 5, 2021, the Defendant participated in a "Stop the Steal" rally

at the Pennsylvania State Capitol in Harrisburg, Pennsylvania. During the rally, supporters of

former president Donald Trump, including members of the organization "Free PA," of which the

Defendant was a part, urged legislators to decertify the result of the 2020 presidential election. Specifically, the Defendant attended the rally holding a sign reading, "Decertify Or We Will Not Forget Your Face Cutler!" *See* Images 1 and 2 below. At trial, the government anticipates eliciting testimony to establish that "Cutler" is a reference to Pennsylvania House Speaker Bryan Cutler, who protesters believed had the authority to "decertify" the presidential election results in his state.



*Image 1 (Defendant circled in red)*



*Image 2: Text of the Sign the Defendant Held on January 5, 2021*

The very next day, on January 6, 2021, the Defendant illegally entered the U.S. Capitol with a mob through the East Front Doors of the Capitol. The mob pushed past police officers, filled the halls of Congress, chanted, and otherwise engaged in disorderly and disruptive behavior. The Defendant stayed inside the building for approximately 11 minutes. As a result of the mob's breach of the Capitol Building, the joint session of Congress that had convened to certify the electoral college for the 2020 presidential election, was halted for several hours as members of Congress and former Vice President Pence were forced to evacuate the House and Senate chambers.



*Image 3: The Defendant (circled in yellow)*
*entering the East Front Door of the Capitol Building*

2. <u>Procedural Background</u>

On May 25, 2022, the United States charged the Defendant by information with four misdemeanor offences, including violations of 18 U.S.C. § 1752(a)(1) (Disruptive or Disorderly Conduct within a Restricted Perimeter) and 40 U.S.C. § 5104(e)(2)(D) (Disruptive or Disorderly Conduct in a Capitol Building or on Capitol Grounds). *See* Doc. 14. Section 1752(a)(2) criminalizes "knowingly, *and with the intent to impede or disrupt the orderly conduct of Government business*… engag[ing] in disorderly or disruptive conduct in, or within such proximity

to, any restricted building or grounds[.]" Similarly, Section 5104(e)(2)(D) provides that "An individual or group of individuals may not willfully and knowingly … engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings *with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress* or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress" (emphasis added).

On July 3, 2023, the Government filed notice of its intent to offer evidence of the Defendant's participation in the "Stop the Steal" rally on January 5 as evidence of his intent to impede, disrupt, or disturb the orderly conduct of a session of Congress on January 6. *See* Notice, Doc. 82.

On September 5, 2023, the Defendant filed a brief in opposition to the government's notice, in which he argued that the evidence was inadmissible "propensity evidence" and "prejudicial." *See* Def. Opp. Br., Doc. 93.

For the reasons described below, this Court should deny the Defendant's motion and find the evidence admissible under Rule 404(b).

## II.    LEGAL STANDARD

Federal Rule of Evidence 404(b) provides that evidence of "other crimes, wrongs, or acts" is not admissible to prove a defendant's character, but is admissible for any non-propensity purpose, including motive, intent, plan, knowledge, and absence of mistake. *See e.g.*, *United States v. Bowie*, 232 F.3d 923, 926, 930 (D.C. Cir. 2000) (citing Fed. R. Evid. 404(b)). To the extent a prosecutor intends to introduce such evidence at trial, Rule 404(b)(2)(A) requires that the government provide "reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and (B) do so before trial."

As the D.C. Circuit has instructed, Rule 404(b) is a rule of "inclusion rather than exclusion." *Bowie*, 232 F.3d at 929. Specifically, "[a]lthough the first sentence of Rule 404(b) is 'framed restrictively,' the rule itself 'is quite permissive,' prohibiting the admission of 'other crimes' evidence 'in but one circumstance' – for the purpose of proving that a person's actions conformed to his character." *Id.* at 929-30 (quoting *United States v. Crowder,* 141 F.3d 1202, 1206 (D.C. Cir. 1998) (*en banc*)); *accord United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) ("[A]ny purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered *solely* to prove character") (quoting *United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990) (emphasis in original)).

There is a two-pronged test for determining whether evidence of prior crimes is admissible under Rule 404(b). First, the evidence must be "probative of a material issue other than character." *Miller*, 895 F.2d at 1435 (citation omitted). Second, the evidence is subject to the balancing test of Federal Rule of Evidence 403, which renders it inadmissible only if the prejudicial effect of admitting the evidence "substantially outweighs" its probative value. *Id.* Furthermore, it is not enough that the evidence is simply prejudicial; the prejudice must be "unfair." *Cassell*, 292 F.3d at 796 (quoting *Dollar v. Long Mf'g, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) for the proposition that "[v]irtually all evidence is prejudicial or it isn't material. The prejudice must be "unfair."); *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) ("[T]he Rule focuses on the danger of *unfair* prejudice and gives the court discretion to exclude evidence only if that danger *substantially* outweigh[s] the evidence's probative value.") (citations and punctuation omitted) (emphasis in original).

Furthermore, admission of Rule 404(b) evidence is permitted in the government's case-in-chief. Specifically, the government is entitled to anticipate the defendant's denial of intent and knowledge and to introduce similar act evidence as part of its case-in-chief. *See United States v.*

*Inserra*, 34 F.3d 83, 90 (2d Cir. 1994) ("[Rule 404(b) other crimes evidence] is admissible during the government's case-in-chief if it is apparent that the defendant will dispute that issue"); *United States v. Lewis*, 759 F.2d 1316, 1349 n.14 (8th Cir. 1985) ("It was not necessary for the government to await defendant's denial of intent or knowledge before introducing [Rule 404(b) other crimes] evidence; instead the government may anticipate the defense and introduce it in its case-in-chief").

## III.    ARGUMENT

Evidence of the Defendant's participation in the "Stop the Steal" rally on January 5 is plainly admissible: this evidence is relevant to establishing the Defendant's intent to disrupt Congressional proceedings, as required under both 18 U.S.C. § 1752(a)(2) and 40 U.S.C. § 5104(e)(2)(D). *See* Fed. R. Ev. 401 ("Evidence is relevant if: it has *any* tendency to make a fact more or less probable than it would be without the evidence[.]") (emphasis added). The government seeks to admit the evidence for a proper purpose: to demonstrate the Defendant's state of mind, intent, motivation, and knowledge of the congressional proceedings on January 6, and more specifically, the certification of the 2020 presidential election. *See United States v. Turner*, No. 06-cr-0026 CKK, 2006 WL 1980232, at *4 (D.D.C. July 12, 2006) ("The D.C. Circuit has recognized that 'Rule 404(b) evidence will often have ... multiple utility, showing at once intent, knowledge, motive, preparation, and the like.'") (quoting *Crowder*, 141 F.3d at 1208). Finally, the probative value of the evidence is not "*substantially* outweighed by a danger of … *unfair* prejudice." *See* Fed. R. Ev. 403 (emphasis added).

Given the relatively innocuous nature of the potential evidence at issue here, the government filed its Rule 404(b) Notice in an abundance of caution and to alert the defense in advance of its intent to introduce such evidence. Nevertheless, participation in a lawful First Amendment protest, by itself, is not another "crime," or "wrong," and the government has no intention of suggesting that the jury should engage in propensity-based reasoning. As stated above,

the government's purpose in introducing this evidence is to show the defendant's intent, motivation, and knowledge with respect to the congressional proceedings, which all go directly to establishing an element in two of the Defendant's four charges. Accordingly, this evidence is arguably outside of Rule 404(b) consideration altogether. As the Defendant pointed out in his brief, his actions on the two days were different – on January 5, he participated in a peaceful rally outside the State Capitol; on January 6, he entered the U.S. Capitol with a mob and illegally occupied the building. Thus, even if the jury was inclined to draw an impermissible "propensity" inference, the evidence would not support it.

Even assuming that the evidence of the Defendant's participation in the January 5 "Stop the Steal" rally falls within the ambit of Rule 404(b), the Government's Notice was sufficient under Rule 404: the Notice informed the defendant of the government's intent to introduce the evidence, in writing, and articulated the purpose for offering this evidence.  The Defendant's argument that the "nexus between the Stop the Steal rally" on January 5, 2021 and "the events that transpired at the U.S. Capitol" on January 6, 2021 is "non-existent" defies logic and any fair comparison of the two events.  The events on January 5 in Pennsylvania and on January 6 in Washington, D.C. were both designed and intended to, in some way, encourage the cessation – lawful or not – of the certification of the 2020 presidential election results naming President Joseph R. Biden as the victor of the 2020 presidential election.

> Evidence of a similar act must meet a threshold level of similarity in order to be admissible to prove intent …. What matters is that the evidence be relevant "to show a pattern of operation that would suggest intent" and that tends to undermine the defendant's innocent explanation. Thus, this court has opined, "the admissible bad acts evidence need not show incidents identical to the events charged, so long as they are closely related to the offense.

*United States v. Long*, 328 F.3d 655, 661 (D.C. Cir. 2003) (quoting 2 Weinstein's Federal Evidence § 404.22[1][a]; *United States v. DeLoach*, 654 F.2d 763, 769 (D.C. Cir. 1980)) (additional citations

omitted), Here, the fact that one day before January 6, the Defendant sought to prevent Pennsylvania legislators from certifying the results of the presidential election, is evidence of his knowledge of the certification of the election, and the final certification by the U.S. Congress on January 6 and thus, his intention to disrupt the Congressional session. As described above, the Government has the burden at trial to prove, *inter alia*, that the Defendant had "the intent to impede, disrupt, or disturb … a session of Congress." *See* 40 U.S.C. § 5104(e)(2)(D). The Defendant's participation in another protest just one day prior aimed at "decertification" or otherwise halting the certification of the presidential election is highly relevant to and probative of the Defendant's intent on January 6.

A different district court's discussion of Rule 404(b) in the context of another January 6 case, *United States v. Fitzsimons*, 605 F. Supp. 3d 92, 101 (D.D.C. 2022) is instructive. There, the court carefully considered several categories of Rule 404(b) evidence that the government sought to introduce at the defendant's trial for violations of 18 U.S.C. § 1512(c) (Obstruction of an Official Proceeding),[1] 231 (Civil Disorder), 111 (Assault on Federal Officers), as well as the misdemeanor offenses that the Defendant is charged with here. *See id.* at 95-96. Relevant here, the court admitted records of four phone calls the defendant made to the defendant's Congressional representative in December 2020 in which the defendant referenced "election fraud and indicated his belief that President Biden was not lawfully elected." *Id.* at 101. The court properly reasoned that "[t]hese calls directly link Fitzsimons's beliefs about election fraud to his decision to travel to D.C. on January 6 and show that Fitzsimons was not there simply as a tourist or to support the

---

[1] The difference between the intent requirement under § 1512(c) and § 5104(e)(2)(D) is a matter of degree. *Compare* 18 U.S.C. § 1512(c) ("Whoever *corruptly* … obstructs, influences, or impedes any official proceeding") (emphasis added) *with* 40 U.S.C. § 5104(e)(2)(D) ("An individual… may not *willfully and knowingly* … engage in disorderly or disruptive conduct … *with the intent to* impede, disrupt, or disturb the orderly conduct of a session of Congress[.]") (emphasis added).

outgoing President—he was there because of the certification of the electoral college vote." *Id.*  In contrast, the court found that earlier phone calls from December 2019 (long before the 2020 election) that discussed the defendant's displeasure with the impeachment of former President Trump were not admissible under Rules 404(b) and Rule 403. The court noted that the defendant did not mention the electoral college certification, nor the upcoming election during these calls, and the court further found that there was a legitimate risk of unfair prejudice resulting from these particular calls. *See id.* at 100. The court similarly excluded a phone call from March 2020 in which the defendant expressed racial animus towards the Chinese president at the start of the Covid-19 pandemic. *See id.* at 100-01.[2]

Here, the Defendant's attendance at the January 5, 2021 "Stop the Steal" rally, while holding a sign referencing the certification proceedings of his state government, is directly relevant to the defendant's intent to disrupt the congressional proceedings on January 6, 2021, just like the December 2020 phone calls that the *Fitzsimons* court admitted. The two events occurred close in time and are clearly related to the defendant's beliefs about and desire to disrupt the proceedings to certify the 2020 presidential election results.

Finally, any prejudicial effect of this evidence would not be unfair and certainly would not substantially outweigh the evidence's probative value pursuant to Rule 403. The Defendant's participation in a political rally in Pennsylvania one day earlier will not unfairly prejudice the Defendant – there is no allegation that the Defendant acted illegally at this rally, and the Government intends to make no argument that individuals who participated in the "Stop the Steal" rally in Pennsylvania did anything wrong.  *See id.* at 101 ("Merely demonstrating Fitzsimons's politics is not enough to be unfairly prejudicial or substantially outweigh the probative value of

---

[2] The *Fitzsimons* court also excluded a Facebook post from December 2020 on hearsay grounds. *See id.* at 103.

the evidence, which is the standard for exclusion under Rule 403.") (citing *United States v. Cassell*, 292 F.3d 788, 796 (D.C. Cir. 2002)). "In addition, 'bad acts evidence is typically 'not barred by Rule 403 where such evidence did not involve conduct any more sensational or disturbing than the crimes with which the defendant was charged.'" *Id.* (quoting *United States v. Wilkins*, 538 F. Supp. 3d 49, 78 (D.D.C. 2021)).

Any danger that the jury might conflate participation in a political rally with the illegal riot that took place at the Capitol can by mitigated by a limiting instruction if the Court deems it necessary, although even that seems like an unnecessary stretch under these facts. *See e.g.*, *United States v. Bell*, 795 F.3d 88, 100 (D.C. Cir. 2015) (limiting instructions "mitigate the danger of undue prejudice or improper inferences;" juries are presumed to follow such instructions).

## CONCLUSION

For the reasons set forth herein, the United States respectfully requests that this Court deny the Defendant's motion to exclude evidence of his participation in a "Stop the Steal" rally on January 5 and rule that such evidence is admissible pursuant to Rule 404(b).

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:     /s/ *Brian Morgan*
BRIAN MORGAN
NY Bar No. 4276804
Trial Attorney
601 D Street, N.W.
Washington, D.C. 20530
Brian.morgan@usdoj.gov
(202) 305-3717

 /s/ *Katherine E. Boyles*
Katherine E. Boyles
Assistant U.S. Attorney
D. Conn. Fed. Bar No. PHV20325

United States Attorney's Office
601 D Street NW
Washington, D.C. 20001
Phone: 203-931-5088
Email: Katherine.Boyles@usdoj.gov