UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 1:22-CR-183-002 |
| | : | |
| | : | |
| V. | : | |
| | : | |
| | : | |
| LYNNWOOD NESTER | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S POSITION REGARDING SENTENCING**

COMES NOW, the Defendant herein, Lynnwood Nester (henceforth referred to as Mr. Nester), through undersigned counsel, and pursuant to Fed. R. Crim. P. 32(i)(3) and 18 U.S.C. § 3553(a), to provide Probation and the Court with relevant information to consider in determining a sentence that is no greater than necessary to achieve the goals of sentencing under § 3553(a) and in response to the Final Presentence Report, Document 131 (henceforth referred to as PSR).

As an initial matter, Mr. Netser stands before this Court accepting his punishment. In providing the Court with this memorandum, he in no way minimizes his conduct as he recognizes and acknowledges the severity of his crimes which require punishment from this Court.

## Defendant History and Characteristics

Mr. Nester was born on 10 February 1967 to Francis and Lois Nester in Mechanicsburg, PA (PSR p. 12). He has an older sister, Janeen, who lives in Lancaster PA, and a younger brother, Wendell, who lives in Maryland (PSR p. 12). Mr. Nester began working full time at his father's welding business after graduating High School in 1985 and continue there until 2015 (30 years) (Doc 135 p.2). He was recruited to work in the archery department of the local sporting goods store due to his knowledge, experience, and passion for competitive archery.

Mr. Nester lives alone in the home he owns in Dillsburg, PA (PSR p. 13). He maintains a modest lifestyle and earns $1,440.00 per month at his employment; and drives a 2008 Ford Escape (PSR p. 14-15). In the event of a lengthy incarceration as suggested in the PSR, he would have difficulty maintaining the property and his current financial obligations.

Mr. Nester's siblings both live over an hour away from their elderly parents (80 and 82 years old), while Mr. Nester lives less than 10 miles from them and assists them frequently.

Mr. Nester was elected as a Committeeperson for his District in 2021, and one of his responsibilities is to be a Poll Watcher. He is also a member of the Township Planning Commission.

Mr. Nester has served as an election worker in all elections since the 2020 primary as either a poll worker for the County (when needed) or as candidate advocate. Consistent with his trial testimony, Mr. Nester became concerned about vulnerabilities in the PA Elections following the 2020 Pennsylvania primary, which was not a highly contested election, and before there was widespread allegations of election fraud. Despite his concerns, Mr. Nester avoided disseminating or promulgating theories about "fraud" or "cheating," rather often shared what he learned during Poll worker training to try to quell some of the unsubstantiated claims. Further, Mr. Nester shared his observations and concerns with election officials and PA State legislators in hopes of making the process more secure, and to help raise voter confidence in the process.

**Acceptance**

Mr. Nester expressed deep remorse for his actions and acknowledged his conduct was wrongful; he further apologized to police, legislators, staff members, and others for the damage his actions contributed to the stain of the event on 6 January 2021 (PSR p. 10). Such acknowledgement thereby illustrates his awareness of the severity of his offenses crimes and demonstrates acceptance of his punishment.

## PSR Objections

Ms. Watkins expressed objections to the initial PSR that were filed on 1 July 2024 (Doc 133). Accordingly, these objections are incorporated herein by reference. Certain of those objections are further addressed below.

<u>Acceptance of Responsibility</u>

Probation recommended that Mr. Nester receive a 0-point reduction for Acceptance of Responsibility. USSG §3E1.1 provides that "if the defendant clearly demonstrates acceptance of responsibility for his offense." then a reduction should apply to the offense level.

Application Note 2 provides that while a reduction under §3E1.1 is not intended to apply to a defendant who denies guilt and require the government to meet its burden, there are instances where a defendant may clearly demonstrate an acceptance of responsibility for criminal conduct and still exercise their constitutional right to trial. In addition, when a defendant "pleads guilty to some counts but goes to trial on others, the Court must assess the 'totality of the circumstances' in deciding whether to grant a reduction for acceptance of responsibility." <u>United States v. Williams</u>, 344 F.3d 365, 379 (3d Cir. 2003) (citing <u>United States v. Cohen</u>, 171 F.3d 796, 806 [3d Cir. 1999]).

Here, Mr. Nester sought to plead *nolo contendere* and did not wish to put the Government to the burden of a trial.  Mr. Nester's efforts in attempting to do and

his testimony at trial as well as his statements subsequent to trial are factors that are consistent with acceptance of responsibility when viewed in their totality.

## SECTION 3553(a) ARGUMENT

Section 3553(a) is comprised of two (2) distinct parts: the sentencing mandate contained in the prefatory clause of § 3553(a), and the factors to be considered in fulfilling that mandate. The overriding mandate of § 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary" to comply with the four (4) purposes of sentencing set forth in § 3553(a): (a) retribution; (b) deterrence; (c) incapacitation; and (d) rehabilitation. United States v. Yeaman, 248 F.3d 223, 237 (3d Cir. 2001).

In determining whether the sentence is sufficient to comply with the § 3553 purposes of sentencing, the Court must consider several factors listed in § 3553(a). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, the need for deterrence, the need to protect the public, and the need to provide the defendant with needed educational or vocational training or medical care; (3) the kinds of sentences available; (4) the Sentencing Guidelines range; (5) pertinent policy statements of the Sentencing Commission; (6) the need to avoid unwanted sentencing disparities; and (7) the need to provide restitution to victims.

18 U.S.C. § 3553(a). While district courts must consider the sentencing guideline range, the guidelines do not diminish the other factors in § 3553(a). United States v.

Booker, 543 U.S. 220, 245-46 (2005). The "sufficient, but not greater than necessary" requirement is often referred to as the "parsimony provision." United States v. Ferguson, 456 F.3d 660, 667 (6th Cir. 2006). It is the parsimony provision that serves as the "guidepost for sentencing decisions post-Booker." Id.

In keeping with the sentencing mandate under 18 U.S.C. § 3553(a), which requires this Court to impose a sentence that is "sufficient, but not greater than necessary", mitigating factors that this Honorable Court should take into consideration under § 3553(a) include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, the need for the sentence imposed, the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

1. Factor 1:

Mr. Nester is not alleged to nor is there any evidence of violence on his behalf.  Indeed, after going home and watching more detailed video, he spent time seeking to educate people who wrongly believed the police were somehow complicit in allowing people into the building and further seeking to dispel any conspiracy theories about police and their efforts to restrict people from entering the Capital.

Mr. Nester was in the actual Capital building for ten (10) minutes and 25 seconds.  His path followed Sandy Weyer in search of her brother, Michael

Pomeroy and the bulk of his time was spent at the doorway. He never sought to gain access to members of Congress or their offices. While he then spent additional time outside of the Capital, he peacefully departed.

2. Factor 2

Mr. Nester has respected the law for the entirety of his life. Mr. Nester Watkins has been compliant with his pre-trial supervision. The need to protect the public from Mr. Nester is exceedingly low considering his actions on the day in question as well as his non-existent criminal history. Additionally, Mr. Nester understands the seriousness of the offense. This can be seen in his testimony given to the jury during trial when he broke down when discussing the shame he now feels for his role in the riot.

Mr. Nester is not in need of educational or vocational treatment. Furthermore, the need for rehabilitation may not serve as the basis for the imposition of a lengthier prison sentence as none is warranted here. United States v. Vazquez-Mendez, 915 F.3d 85, 88 (1st Cir. 2019) (citing Tapia v. United States, 564 U.S. 319, 335 [2011]).

Moreover, Mr. Nester's age and likely lack of recidivism should be taken into account. Mr. Nester is 57 years of age. Offenders over the age of 50 have a recidivism rate of less than half that of offenders under the age of 50.[1]

---

[1] Older Offenders in the Federal System, United States Sentencing Commission, July 2022

3. <u>Factor 3</u>

To avoid sentencing disparities, this Court needs to prevent the Government from impermissibly circumventing the jury's findings. Here, a sentence far more than similarly disposed defendants is being sought.

In comparing relevant sentences for this Court's consideration: The three (3) other men Mr. Nester was with on 6 January 2021 were charged with the same 4 misdemeanors as Mr. Nester. All three (3) plead to 40 U.S.C. §5104(e)(2)(G).

- William Blauser (21-cr-386) spent 36 minutes inside and received no jail time and no probation, he was given a $500 Restitution and $500 Fine
- Michael Pomeroy (22-cr-183) spent 20 minutes inside and received 30 days, no probation, and $500 Restitution
- Brian Korte (22-cr-183), who Nester remained with for the entire 10 minutes he was inside, received 21 days, no probation, and $500 Restitution

In addition, This Honorable Court has sentenced 33 defendants (including the above three (3)) for misdemeanor offenses, 30 of whom plead guilty to a single count. Their sentences ranged from probation to four (4) months, with the majority (20) getting between 10 and 30 days in jail. Of note, two plead to all four (4) counts and received just probation, and the other 14 days. See Exhibit A.

Tony Gill, who This Honorable Court sentenced on 12 July 2021, received 45 days confinement, but Gill was also on the Lower West Terrace where the worst of the fighting occurred and he climbed through a broken window into room ST-2M, adjacent to the Tunnel entrance.

It is also respectfully submitted as a significant sentence disparity factor that Ms. Weyer, who Mr. Nester followed in the Capital and whose conduct therein was far more egregious than Mr. Nester will likely only receive a sentence of three (3) months. Ms. Weyer was charged with and convicted of 18 U.S.C. §1512(c)(2), as well as the same four (4) misdemeanors as Mr. Nester, initially received a sentence of 14 months after contesting the charges at trial. (See 1:22-CR-00040-JEB, Doc 72). She was released from her sentence pending *certiorari* after serving a little over three (3) months. Id. p.5. In the opinion releasing Ms. Weyer, the Court opined it is unlikely Ms. Weyer would receive a sentence greater than that which she has already served. The Court also stated that her four (4) misdemeanor sentences would run concurrently. Id. p.5.

<u>Additional Personal History/Characteristics</u>

In accordance with § 3553(a), Mr. Nester submits 17 letters of support for This Honorable Court's consideration when evaluating a sentence pursuant to USSG § 5H11.1.

A few quotes of note from the various letters are included herein.

Ms. Angela Kline states, "I understand he has been found guilty and it is your responsibility to decide the proper sentence for Lynn's crime. However, Lynn has shown remorse for his bad decisions on January 6. Lynn is always ready to help his neighbors. He is a man of integrity and is generous with his time to anyone in need."

Carol Sojda, a retired corrections officer notes that,

> I watched Lynn help others with simple errands to the grocery store, helping business owners navigate the sadness of closing or staying open, and the effects of both. He selflessly assisted them with shopping, appointments and errands, mandates and laws, showing them love, kindness and hope. He was available to help anyone in the community at that time with anything, being a liaison to resources that helped people who were struggling in our community, asking for nothing in return. He did so with character, grace and a special caring and kindness that is very rare… I have professionally watched first hand as people become negative, vengeful and vindictive after being arrested and convicted. They spiral into the depths of darkness. Not Lynn, he became even more loving, caring and kind, but most of all, reflective on what he could do to better himself and those around him.

Matthew Foltz states that, "[h]is generosity knows no bounds. Lynn is the type of person who goes out of his way to ensure that others are taken care of, often putting their needs before his own. He has been involved in several charitable activities, dedicating his time and resources to make a positive impact on the lives of others."

Rhonda Fochtman speaks to Mr. Nester's respect for other's opinions and says,

>Lynn is someone who listens before he speaks, and thoughtfully considers all sides of any given subject at hand, always taking into consideration, what is fair, honest, and unbiased. Although he may disagree at times with certain people and topics, he is respectful to opposing belief systems or opinions of others. And I admire him for this.
>    We have discussed several times about what he could've done differently during his visit to DC, on January 6th, and would've done some things differently.

Vicki Comfort, too, talks about how Mr. Nester handles disagreements and respects other people's positions.  She says, "[h]ave we always seen eye to eye on those candidates? Absolutely not but we respected each other's opinions. That is the type of person Lynn is. You don't always have to agree with him, but he will be happy to sit down and have a calm, intelligent conversation with you. Isn't that the type of people we want in our communities?"

Zackary Barber, Mr. Mr. Nester's employer states that, "Mr. Nester has always had my business partner Kyle and I's best interest in mind and it shows well past our business…Mr. Nester is the most reliable and thorough person I have encountered in my time of entrepreneurship.  Without his guidance we would not be where we are today."

Finally, Mr. Nester's parents speak to their need for his care and their need for their personal situations as they are in their 80's.

Please do not allow a lifetime of hard work and generosity to his community to be overshadowed by his actions on one day out of 57 years.  Mr. Nester

respectfully requests these personal considerations be factored into determining his sentence.

WHEREFORE, in light of the foregoing, Mr. Nester respectfully requests that this Honorable Court take into consideration the above requests prior to imposing his sentence. Mr. Nester should be sentenced in accordance with the parsimony provision of § 3553: sufficient, but not greater than necessary to meet the sentencing goals of the statute.

Respectfully submitted,

CRISP AND ASSOCIATES, LLC

Date: 12 July 2024

/s/Jonathan W. Crisp
Jonathan W. Crisp, Esquire
4031 North Front St.
Harrisburg, PA  17110
I.D. # 83505
(717) 412-4676
jcrisp@crisplegal.com
Attorney for Defendant